JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Shultz, Tiffany

**(b)** County of Residence of First Listed Plaintiff: Centre
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Amy H. Marshall, Esquire   (814) 867-8055
330 Innovation Blvd., Suite 302
State College, PA 16803

## DEFENDANTS
The Pennsylvania State University

County of Residence of First Listed Defendant: Centre
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☒ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Family Medical Leave Act
Brief description of cause:
Defendant terminated Plaintiff while on an approved FMLA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE: 06/14/2017
SIGNATURE OF ATTORNEY OF RECORD: /s/ Amy H. Marshall, Esquire

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIFFANY SHULTZ, <br> Plaintiff, | : <br> : <br> : |
| Vs. | : <br> : <br> : |
| THE PENNSYLVANIA STATE <br> UNIVERSITY, <br> Defendant. | : <br> : <br> :  JURY TRIAL DEMANDED |

### COMPLAINT

AND NOW COMES Plaintiff Tiffany Shultz ("Plaintiff") by and through her attorneys Amy H. Marshall, Esquire and Babst, Calland, Clements and Zomnir, P.C. and files this Complaint against The Pennsylvania State University ("Defendant") in support thereof and avers as follows:

### JURISDICTION

1. This Court has jurisdiction over this action pursuant to the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §2601 et seq.

2. This Court can exercise personal jurisdiction over Defendant because, among other things, Defendant continuously and systematically conducts business in the Commonwealth of Pennsylvania. Defendant employed Plaintiff in the Middle District of Pennsylvania and Defendant terminated Plaintiff in the Middle District of Pennsylvania.

3. Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius, meeting the definition of employer under the FMLA pursuant to 29 U.S.C. § 2611(4a).

### VENUE

4. Venue is proper in this judicial district because the unlawful employment practice alleged in the Complaint was committed within the Middle District of Pennsylvania; Defendant regularly conducts business in the Middle District of Pennsylvania; Plaintiff would be employed

in the Middle District of Pennsylvania, but for the unlawful employment practices and Defendant employs numerous individuals in the Middle District of Pennsylvania. Accordingly, venue lies in the United States District Court for the Middle District of Pennsylvania.

## PARTIES

5. Plaintiff is an adult individual, who at all times relevant to the allegation in this Complaint resided in Bellefonte, Pennsylvania, Centre County. Plaintiff avers that she is an eligible employee pursuant to 29 U.S.C. § 2611(2a).

6. Defendant is a provider of higher education within the Commonwealth of Pennsylvania. The Defendant's main office is located at 201 Old Main, University Park, Pennsylvania 16802.

7. At all relevant times hereto, Defendant was Plaintiff's employer and was an employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(4a).

8. Defendant has employed more than fifty (50) regular employees for each working day in each of the twenty (20) or more calendar weeks in the current or proceeding calendar year. Defendant is an "employer" within the meaning of the FMLA 29 U.S.C. § 2611(4a)i.

## FACTUAL BACKGROUND

9. The Plaintiff began employment as a wage payroll employee with the Defendant in August 1988.

10. Plaintiff was informed on June 26, 2015, that retroactive to June 16, 2015, she was terminated from employment.

11. On or about September 10, 2014, Plaintiff submitted documentation to the Human Resources Department requesting an FMLA leave. The leave was to begin on November 6, 2014, the date on which Plaintiff was scheduled for surgery.

12. Defendant approved the request for FMLA leave and beginning November 6, 2014, Plaintiff initiated an FMLA leave. Prior to November 6, 2014, Plaintiff had required three previous FMLA leaves to treat a significant orthopedic issue.

13. Plaintiff had her surgery on November 6, 2014. Beginning in December of 2014, the Plaintiff began utilizing intermittent leave. The hours of work and FMLA leave were reported to Defendant via payroll.

14. Defendant was aware of Plaintiff's work. Specifically, the Plaintiff was requested by her supervisor, Rich Marini, to provide assistance in vetting candidates for a receptionist position. Mr. Marini contacted the Plaintiff on multiple occasions via e-mail regarding her assistance in this process of selecting candidates for the receptionist position. In January 2015, the Plaintiff attended interviews for prospective candidates.

15. In January 2015, Plaintiff e-mailed requesting a donation of vacation time from her department due to a need for a longer leave based upon complications from the surgery. Donation of vacation time from other employees was an established policy.

16. On January 8, 2015, Erikka Runkle, Interim Director of Human Resources for the College of Agriculture, responded to the Plaintiff's request and denied her request for vacation donation. Specifically, Ms. Runkle indicated "I have looked into the College's program to evaluate past approvals. Although your surgery is FMLA eligible, I regret to inform you that your request has been denied." This was the Plaintiff's first request, despite her prior use of FMLA.

17. Ms. Runkle went on to request a medical excuse from the Plaintiff's physician in the event she was able to perform light duty. Ms. Runkle specifically requested the correspondence

indicate details such as the length of time permitted to work each day and what specific duties the Plaintiff was able to perform.

18. In response to Ms. Runkle's letter, the Plaintiff's physician provided correspondence dated January 14, 2015. The Plaintiff's physician released her to four hours of work at the office and four hours of work at home beginning February 2, 2015. The Plaintiff's physician further opined that the Plaintiff could be released to full duty as of March 1, 2015.

19. On February 2, 2015, Plaintiff returned to work under the restrictions provided by her treating physician. On February 9, 2015, the Plaintiff received an e-mail from Brian Mauserberg, the Financial Officer for the College of Agriculture, asking for a meeting to discuss an audit of her department. On February 12, 2015, the Plaintiff had a meeting with Mr. Mauserberg and other individuals relating to the audit. On February 23, 2015, the Plaintiff reported for work and at 8:10 a.m. was summoned to Rick Marini's office. During the meeting in Mr. Marini's office, Erikka Runkle and Crystal Switalski were also in attendance.

20. At the time the Plaintiff returned to work on February 2, 2015, none of the employees within her department would speak to her on a regular basis.

21. On February 6, 2015, the Plaintiff had a conversation with Rich Marini. During the conversation, Mr. Marini indicated that the office functioned without her for the past three months, maybe she should consider seeking retirement.

22. During the February 23 meeting the Plaintiff was read a statement which effective immediately placed her on an unpaid, indefinite administrative leave of absence. Plaintiff was told the leave was necessary due to a possible interference with the internal investigation. The Plaintiff was required to turn in her keys and to have no further contact with anyone in the building or be on campus.

23. Given her length of service with the Defendant, on March 4, 2015, the Plaintiff began seeking to initiate her retirement papers with a perspective retirement date of March 16, 2015.

24. As a result of her inquiries, the Plaintiff spoke with James Bierling and Jill Musser from the Central Human Resources office. Both individuals indicated that the Plaintiff had accrued enough service time to retire on Monday, March 16, 2015, with 25 years of service.

25. On March 16, 2015, the Plaintiff went to her office to issue her retirement notice. At that time, the Plaintiff was reprimanded by Erikka Runkle for her appearance at the building.

26. On March 17, 2015, Ms. Runkle called the Plaintiff to notify her that she was 15 days short to receive her full retirement benefits. When the Plaintiff questioned Ms. Runkle based upon the confirmation she had received from Central Human Resources, Ms. Runkle indicated that any information provided to her was inaccurate.

27. Ms. Runkle indicated the Plaintiff was free to retire but she would not receive her full retirement benefits if she continued to seek retirement status.

28. The Plaintiff remained on an indefinite, unpaid leave despite requests from Plaintiff's counsel for a time-frame in which the investigation would be completed.

29. Counsel for the Plaintiff was advised that the indefinite, unpaid leave was not a policy of the University but rather a practice of Erikka Runkle in the College of Agriculture. On April 22, 2015, the Plaintiff met with Erikka Runkle, Crystal Switalski and Barbara Christ to respond to allegations made during the audit. On June 26, 2015, counsel received a letter from Penn State University indicating that the Plaintiff was being summarily discharged retroactive to June 16, 2015.

30. Thereafter, the Plaintiff was permitted to retire from the University with her full benefits accrued for 25 years of service.

31. Plaintiff's counsel was advised that the Office of General Counsel was not in a position to make decisions regarding the Plaintiff's leave. Counsel was advised that Erikka Runkle was in charge of the investigation and the decisions being made.

## INTERFERENCE WITH FAMILY AND MEDICAL LEAVE ACT
### Count I

32. Plaintiff incorporates by reference the averments of Paragraphs 1-31 of the Complaint as if the same were set forth in full.

33. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

34. Defendant approved the Plaintiff to take an FMLA leave. Plaintiff had submitted her request to the HR Department on September 10, 2014. Plaintiff's FMLA leave began on the date of surgery, November 6, 2014.

35. Plaintiff utilized intermittent leave beginning in December of 2014.

36. On January 14, 2015, the Plaintiff's treating physician, John Sefter, provided a return to work letter indicating Plaintiff was permitted to return to work starting February 2, 2015, working four hours at the office and four hours at home. Dr. Sefter further opined the Plaintiff could be released to full duty as of March 1, 2015.

37. On February 23, 2015, the Plaintiff was placed on an un-paid administrative leave after meeting with Rich Marini, Erikka Runkle and Crystal Switalski.

38. Plaintiff was informed that the unpaid administrative leave was due to possible interference with an internal investigation. Plaintiff was not given any other details. Plaintiff was not given any documentation.

39. Defendant's conduct in placing the Plaintiff on an indefinite, unpaid administrative leave is contrary to the Plaintiff's rights under the FMLA. Inasmuch as the Defendant interfered with the Plaintiff's ability to take the remainder of her FMLA leave.

40. Defendant's conduct was with malice and/or reckless inference to the Plaintiff's federally protected rights.

41. As a direct and proximate result of the above-mentioned employment practices, Plaintiff was deprived of her wages, fringe benefits, retirement contributions for which Plaintiff seeks damages under the FMLA.

## DISCRIMINATION/RETALIATION VIOLATION of the FAMILY MEDICAL LEAVE ACT

### Count II

42. Plaintiff incorporates by reference the averments of Paragraphs 1-41 of the Complaint as if the same were set forth in full.

43. Plaintiff was eligible for FMLA leave.

44. Defendant approved the Plaintiff for an FMLA leave beginning November 6, 2014.

45. Defendant was aware of the Plaintiff's medical condition, which required the FMLA leave.

46. Defendant was also aware that Plaintiff had required previous FMLA leaves to address her serious medical condition.

47. It is believed and therefore averred that the Defendant's action in placing the Plaintiff on an indefinite, unpaid administrative leave was a punitive measure against the Plaintiff for having asserted her rights under the FMLA.

48. Defendant's discriminatory intent is further exhibited through the actions Rich Marini by the comments made to Plaintiff on February 6, 2015.

49. Defendant's discriminatory intent is exhibited by Erikka Runkle's denial of Plaintiff's request pursuant to the vacation donation policy.

50. Defendant's discriminatory intent is further confirmed by the actions of Erikka Runkle denying Plaintiff's ability to retire with full benefits as of March 16, 2015, despite confirmation of her ability to do so by both James Bierling and Jill Musser from Central Human Resources at Penn State University.

51. As a direct and proximate result of the above-mentioned employment practices, Plaintiff was deprived of her job and has lost income in the form of back and front pay, fringe benefits, retirement contributions, medical insurance and lost future job opportunities for which Plaintiff seeks damage under the FMLA.

WHEREFORE, Plaintiff demands judgment against Defendant pursuant to the FMLA, and damages in an amount that this Court and a jury deem fair and reasonable including but not limited to, front pay, back pay from the date of the wrongful acts, equitable relief, compensatory damages, prejudgment interest, post judgment interest and reasonable attorney's fees including litigation expenses, and the costs in this action.

Respectively submitted,

BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.

Date: June 14, 2017

By: /s/
Amy H. Marshall, Esquire
Attorney for Plaintiff
Attorney ID: 74852
330 Innovation Blvd., Suite 302
State College, PA 16803
Phone: (814) 867-8055
Fax: (814) 867-8051
amarshall@babstcalland.com